**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 08-0555-PHX-NVW |
| Plaintiff, | )<br>) | **ORDER** |
| vs. | )<br>) | |
| Manuel de Jesus Medina-Avila, | )<br>) | |
| Defendant. | )<br>) | |
| | ) | |

      Defendant Manuel de Jesus Medina-Avila ("Medina-Avila") was indicted for illegal reentry after deportation in violation of 8 U.S.C. § 1326. He contends that the underlying deportation order was invalid, and that the indictment must therefore be dismissed. The court now considers Defendant's Motion to Dismiss the Indictment (doc. # 15).

**I.	BACKGROUND**

      Medina-Avila is a Mexican citizen. He entered the United States on April 20, 1985, and became a lawful permanent resident on December 1, 1990, under special agricultural worker provisions of the Immigration and Naturalization Act. Less than two years later, Medina-Avila was indicted on numerous drug charges and pled guilty to possession for sale of a controlled substance. A California court sentenced him to eight years in prison. After serving approximately four years and one month of the sentence, Medina-Avila was released into the custody of immigration authorities. Removal proceedings ensued.

At the time of Medina-Avila's guilty plea, section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (1992), allowed aliens to obtain a discretionary waiver of deportation from the Attorney General.  In the case of an alien with an aggravated felony conviction, discretionary relief was available for aliens who, like Medina-Avila, had served a term of imprisonment of five years or less.  *Id.* This law changed in April 1996 when Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  AEDPA § 440(d) curtailed the availability of § 212(c) relief.  It eliminated the waiver provision for all aggravated felony convictions, regardless of the term of imprisonment served. 110 Stat. 1277. AEDPA became effective prior to the start of Medina-Avila's removal proceedings, and it is potentially applicable in Medina-Avila's case.  *See Magana-Pizano v. INS*, 200 F.3d 603, 613 (9th Cir. 1999).

Medina-Avila contends that he was eligible for a § 212(c) waiver under the law that existed at the time of his plea.  Nonetheless, the immigration judge ("IJ") denied his application for § 212(c) relief and the Board of Immigration Appeals ("BIA") affirmed, holding that AEDPA barred his request because he had pled guilty to an aggravated felony.[1] Medina-Avila was removed from the United States on February 23, 1999.

Medina-Avila reentered the United States on or about April 1, 2004, and was arrested in a routine traffic stop.  The Government has charged Medina-Avila with illegal reentry after deportation in violation of 8 U.S.C. § 1326(a), with an enhancement pursuant to 8

---

[1] The IJ based his decision on the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546 (Sept. 30, 1996). IIRIRA, which became effective the year following the passage of AEDPA, repealed § 212(c) altogether.  110 Stat. at 3009-597. It replaced § 212(c) with a narrower mechanism by which the Attorney General could grant "cancellation of removal." 110 Stat. at 3009-594 to -597. Because  Medina-Avila's removal proceeding was pending at the time of IIRIRA's passage, IIRIRA's transitional rules apply, which maintain the availability of § 212(c) relief, subject to AEDPA § 440(d). *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1118 n.1 (9th Cir. 2002).   Therefore, contrary to the assertion of the IJ, IIRIRA's repeal of § 212(c) did not mandate the denial of Medina-Avila's § 212(c) waiver. *See id*.

U.S.C. § 1326(b)(2) for the prior aggravated felony conviction.  Medina-Avila now moves to dismiss the indictment on the grounds that the 1999 removal order was invalid.

**II.    LEGAL STANDARD**

"Because the underlying removal order serves as a predicate element of an illegal reentry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause." *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004). However, "an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that—(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.*"* 8 U.S.C. § 1326(d). "An underlying removal order is fundamentally unfair if (1) an alien's due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Pallares-Galan*, 359 F.3d at 1095 (internal quotation marks and citation omitted).  To show prejudice, the alien must demonstrate "plausible grounds for relief which might have been available to him but for the deprivation of his rights."  *United States v. Zarate-Martinez*, 133 F.3d 1194, 1198 (9th Cir. 1998), *overruled on other grounds by United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2002) (en banc).

**III.    ANALYSIS**

Medina-Avila exhausted his administrative remedies by appealing his removal to the BIA.  Therefore, Medina-Avila's case depends on whether the deportation proceedings improperly deprived him of the opportunity for judicial review, and whether the entry of the removal order was fundamentally unfair.  8 U.S.C. § 1326(d).  Medina-Avila succeeds in making this showing. Medina-Avila remained eligible for § 212(c) relief after the enactment of AEDPA because he had pled guilty in reliance on the availability of § 212(c) relief.  The immigration courts' failure to advise the defendant of § 212(c) eligibility constituted an improper deprivation of judicial review as well as a defect in the removal proceeding.  The

Government does not dispute that Medina-Avila has demonstrated plausible grounds for relief under the § 212(c) standard, if it applies.  Therefore, Medina-Avila's motion to dismiss the indictment will be granted.

### A.  Prima Facie Eligibility for § 212(c) Relief

As a preliminary matter, it must be decided whether § 212(c) relief was prima facie available to Medina-Avila during his deportation proceedings.  The Supreme Court has addressed this question in the closely related context of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") Pub. L. No. 104-208, 110 Stat. 3009-546 (Sept. 30, 1996).  *See INS v. St. Cyr*, 533 U.S. 289 (2001).[2] IIRIRA  repealed § 212(c) altogether in 1997, before St. Cyr's removal proceedings were instituted.  *Id.* at 293.   The Court nonetheless held that IIRIRA's repeal of § 212(c) did not apply to St. Cyr because St. Cyr had entered his guilty plea before the passage of IIRIRA, in reliance on the availability of § 212(c) relief.  *Id.* at 325-26.  "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."  *Id.* at 326. To hold otherwise would give retroactive effect to a statute where Congress had not clearly mandated such a result. *St. Cyr*, 533 U.S. at 321-26.

The Ninth Circuit had reached a similar conclusion two years earlier under AEDPA.[3] *See Magana-Pizano v. INS*, 200 F.3d 603, 614 (9th Cir. 1999).  Section 212(c) relief may

---

[2] In *St. Cyr*, the Government had argued to the Second Circuit that both AEDPA § 440(d) and IIRIRA § 309(a) had retroactive effect on aliens who had pled guilty prior to enactment. The Second Circuit rejected this argument as to both statutes. *See St. Cyr v. INS*, 229 F.3d 406, 413-18 (2d Cir. 2000).  The Supreme Court affirmed, but limited its discussion to the retroactivity of IIRIRA.

[3] As a technical matter, *Magana-Pizano* governs this case because Medina-Avila's removal proceedings were instituted prior to the enactment of the IIRIRA provision at issue in *St. Cyr*. Therefore, although the IJ cited IIRIRA, § 212(c) relief could be denied only under AEDPA.

1    remain available in post-AEDPA removal proceedings, such as Medina-Avila's, if the alien

2    pled guilty in reliance on the availability of a discretionary § 212(c) waiver.  *Id.*

3                    *1.    Application of Magana-Pizano*

4            The Government suggests that Medina-Avila cannot benefit from the holding of

5    *Magana-Pizano* because that case was decided subsequent to Medina-Avila's removal

6    proceedings and has no retroactive effect.  The government further suggests that *St. Cyr* has

7    no retroactive effect, notwithstanding the Ninth Circuit's assumption to the contrary in

8    *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050-51 (9th Cir. 2004).  In *Alvarenga-*

9    *Villalobos v. Ashcroft*, the Ninth Circuit rejected the retroactive application of *Magana-*

10   *Pizano* in a different context—a reinstatement proceeding where the alien sought to

11   challenge the prior deportation order being reinstated. 271 F.3d 1169, 1172-73 (9th Cir.

12   2001).[4]  It is this case upon which the Government chiefly relies, contending that *Ubaldo-*

13   *Figueroa* amounted to an oversight because that decision applied *St. Cyr* retroactively

14   without any discussion of *Alvarenga-Villalobos*.

15           The Ninth Circuit applies the rule of *St. Cyr* on collateral review of removal orders

16   in the criminal context, even when the removal order predated the decision in *St. Cyr.  See*

17   *Ubaldo-Figueroa*, 364 F.3d at 1050.   The Government's arguments against this approach

18   have failed in this circuit and others.  *See, e.g.*, *United States v. Lopez-Ortiz*, 313 F.3d 225,

19   230 (5th Cir. 2002); *United States v. Mojica Linos*, 399 F. Supp. 2d 1114, 1118-19 (E.D.

20   Wash. 2005); *Nolasco v. United States*, 358 F. Supp. 2d 224, 230-31 (S.D.N.Y. 2004).  At

21   least two other courts have noted that there is no need to analyze the retroactivity of the

22   analogous decision in *St. Cyr* because that case "finally decided what IIRIRA had *always*

23

24           [4] The court notes that the vitality of *Alvarenga-Villalobos* fell into doubt following the
25   Ninth Circuit's decision in *Arreola-Arreola v. Ashcroft*, 383 F.3d 956, 963 (9th Cir. 2004)
     (recognizing collateral attack on a prior removal order in the reinstatement context), *see*
26   *Nolasco v. United States*, 358 F. Supp. 2d 224, 235-36 (S.D.N.Y. 2004), but its principle was
     recently revived in *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 497-98 (9th Cir. May 8,
27   2007) (en banc) (disallowing all due process challenges to prior removal orders in the
28   reinstatement context).

1  meant and explained why the BIA and the Courts of Appeals had misinterpreted the will of

2  the enacting Congress." *Nolasco*, 358 F. Supp. 2d at 230 (quoting *Lopez Ortiz*, 313 F.3d at

3  230) (internal alterations omitted).

4      *Ubaldo-Figueroa* is no anomaly in this circuit.  A year previous to that decision, the

5  Ninth Circuit had allowed another § 1326 defendant to collaterally attack his 1997 removal

6  order on *St. Cyr* principles.  *See United States v. Leon-Paz*, 340 F.3d 1003, 1005-07 (2003).

7  Neither *Ubaldo-Figueroa* nor *Leon-Paz* mentions *Alvarenga-Villalobos*, but there is no need

8  to interpret this lack of reference as oversight.[5]  Each decision advances a line of authority

9  that is specific to its context.  Indeed, an en banc panel of the Ninth Circuit has recently

10  held—without any mention of *Ubaldo-Figueroa* or *Leon-Paz*—that in the collateral context

11  of reinstating a removal order, the alien may not bring any collateral due process challenge

12  to the underlying order.  *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 497-98 (9th Cir.

13  2007) (en banc).  Thus, the statement in *Alvarenga-Villalobos* that *Magana-Pizano* does not

14  apply retroactively fits into a broader rule against due process challenges in reinstatement

15  proceedings.

16      The reasoning of *Morales-Izquierdo* casts light on the unique concerns of the

17  reinstatement context:

18      Reinstatement of a prior removal order—regardless of the process
   afforded in the underlying order—does not offend due process because
19  reinstatement of a prior order does not change the alien's rights or remedies.
   The *only* effect of the reinstatement order is to cause Morales' removal, thus
20  denying him any benefits from his latest violation of U.S. law, committed
   when he reentered the United States without the Attorney General's
21  permission . . . .
       . . .
22      . . . If [the alien] has a legitimate basis for challenging his prior removal
   order, he will be able to pursue it after he leaves the country, just like every
23  other alien in his position.  If he has no such basis, nothing in the Due Process
   Clause gives him the right to manufacture for himself a new opportunity to
24  raise such a challenge. The contrary conclusion would create a new and wholly
   unwarranted incentive for aliens who have previously been removed to reenter
25  the country illegally in order to take advantage of this self-help remedy.

26

27         [5] Any such oversight seems especially unlikely because the three-judge Ninth Circuit

28  panels in *Alvarenga-Villalobos* and *Leon-Paz* shared not just one, but two judges.

486 F.3d at 497-98.  An alien is not necessarily entitled to collateral review in reinstatement or reopening proceedings, where the stakes do not outweigh the value of finality.  *Morales Izquierdo*, 486 F.3d at 497-98; *Avila-Sanchez v. Mukasey*, 509 F.3d 1037, 1040-41 (9th Cir. 2007) (relying on *Alvarenga-Villalobos* to deny collateral review in the context of a denied motion to reopen).

Unlike reinstatement of a prior order, a criminal conviction for illegal reentry carries heavy new penalties for the alien.  Thus, the opposite rule obtains.  "[I]n a criminal prosecution under § 1326, [t]he Due Process clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation."  *Leon-Paz*, 340 F.3d at 1005; *see also* 8 U.S.C. § 1326(d). Under *Ubaldo-Figueroa*, this review extends to *St. Cyr*-type deprivations of due process. *See Ubaldo-Figueroa*, 364 F.3d at 1048, 1050. The Government cites no case suggesting that *St. Cyr* principles obtain in the illegal reentry context but *Magana-Pizano* principles do not; the two cases grant parallel access to the § 212(c) waiver under IIRIRA and AEDPA, respectively.[6] Therefore, *Magana-Pizano* provides an appropriate legal basis for the collateral attack in this case.

## 2. *Reliance at the Pleading Stage*

*Magana-Pizano* and *St. Cyr* maintain an alien's eligibility for § 212(c) relief only if the alien relied upon pre-AEDPA/IIRIRA law as it existed at the time of pleading. Medina-Avila's plea of guilty satisfies this standard.  The requisite reliance is not "actual, subjective reliance" but rather "objectively reasonable reliance"; under *St. Cyr*, "a guilty plea is evidence of reasonable reliance."  *See Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 944 & n.1 (9th Cir. 2005) (per curiam) (Fisher, J. concurring); *see also St. Cyr*, 533 U.S. at 321 ("Plea agreements involve a *quid pro quo* between a criminal defendant and the government.").

---

[6] Both cases employ the same presumption against retroactive application. *Compare Magana-Pizano*, 200 F.3d at 612 ("Congress provides no express command as to the temporal reach [of AEDPA § 440(d)]"), *with St. Cyr*, 533 U.S. at 318 ("Nothing in [IIRIRA] § 309(c)(1) or the statute's legislative history even discusses the effect of the statute on proceedings based on pre-IIRIRA convictions that are commenced *after* its effective date.").

1   "[I]ndividuals demonstrate reasonable reliance on pre-IIRIRA law . . . if it would have been

2   objectively reasonable under the circumstances to rely on the law at the time." *Hernandez*

3   *de Anderson v. Gonzales*, 497 F.3d 927, 941 (9th Cir. 2007) (approving Judge Fisher's

4   concurrence in *Garcia-Ramirez*).  As the Supreme Court explained in *St. Cyr*, "There can be

5   little doubt that, as a general matter, alien defendants considering whether to enter into a plea

6   agreement are acutely aware of the immigration consequences of their convictions."  533

7   U.S. at 322 (citing *Magana-Pizano*, 200 F.3d at 612).  It was objectively reasonable for

8   Medina-Avila to rely on the availability of the § 212(c) waiver at the time he entered his

9   guilty plea.

10        The language of *Magano-Pizano* does not dictate otherwise.  *Magana-Pizano* calls

11   for "a specific factual showing that a plea was entered in reliance on the availability of

12   discretionary waiver under § 212(c)." 200 F.3d at 613. *St. Cyr* and subsequent Ninth Circuit

13   authority clarify that the standard is an objective one, and that reliance usually pervades the

14   plea bargaining context.  *See St. Cyr*, 533 U.S. at 322; *Hernandez de Anderson*, 497 F.3d at

15   941.

16        Moreover, the Government does not suggest any lack of reliance on Medina-Avila's

17   part.  At the time he entered his guilty plea, Medina-Avila would reasonably expect § 212(c)

18   relief to be available if he served less than five years of his sentence.  Therefore, Medina-

19   Avila was prima facie eligible for § 212(c) relief at the time his removal proceedings

20   commenced.  The question then arises whether the IJ's failure to grant § 212(c) relief, and

21   the BIA' affirmance, improperly deprived Medina-Avila of the opportunity for judicial

22   review.

23        **B.  Improper Deprivation of the Opportunity for Judicial Review**

24        Where the record contains an inference that a deportable alien is eligible for § 212(c)

25   relief, the IJ must advise the alien of this possibility.  *United States v. Muro-Inclan*, 249 F.3d

26   1180, 1183 (9th Cir. 2001); *see also Ubaldo-Figueroa*, 364 F.3d at 1048-49; *United States*

27   *v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).  "Failure to so inform the alien is a denial

28

1   of due process that invalidates the underlying deportation proceeding." *Muro-Inclan*, 249

2   F.3d at 1183-84.

3        Unlike St. Cyr, Medina-Avila has filed no petition for habeas corpus to challenge the

4   validity of his removal order.  The government contends that this failure to petition for

5   habeas corpus undermines any claim that Medina-Avila was deprived of an opportunity for

6   judicial review.  This argument runs against the text of 8 U.S.C. § 1326, which requires

7   exhaustion of administrative—but not judicial or collateral—remedies where a collateral

8   challenge is brought to a deportation order in illegal reentry proceedings.[7]  The Government's

9   argument also runs against the tide of cases already discussed, which permit collateral

10  challenges where the IJ failed to inform the alien of § 212(c) relief, even if the alien fails to

11  file an administrative appeal. *See, e.g.*, *Ubaldo-Figueroa*, 364 F.3d 1042. When an IJ fails

12  to inform an alien of § 212(c) waiver eligibility, the alien is deprived of the opportunity for

13  judicial review because the failure "invalidates the underlying deportation proceeding."

14  *Ubaldo-Figueroa*, 364 F.3d at 1050.  Therefore, Medina-Avila was deprived of the

15  opportunity for judicial review.

16      **C.**    **Fundamental Unfairness**

17       Finally, Medina-Avila claims that the deportation proceeding was fundamentally

18  unfair because its defect violated Medina-Avila's rights and Medina-Avila suffered prejudice

19  as a result under *Pallares-Galan*, 359 F.3d at 1095.  The Government raises no arguments

20  in response, so its response is deemed waived.  For reasons already explained, the underlying

21  deportation proceeding was defective.  As required by former § 212(c), Medina-Avila

22  presented evidence that at the time of the removal proceedings, he had not served a prison

23  term of more than five years.  Medina-Avila also presented evidence that at the time of the

---

25      [7] Because a habeas petition is itself a petition for collateral relief from a federal court,

26  *see Boumediene v. Bush*, 128 S. Ct. 2229, 2264 (2008), it would be strange to require a

27  habeas filing before any collateral challenge under 8 U.S.C. § 1326(d) could be made. Indeed, to require a prior habeas challenge would render § 1326(d) challenges entirely

28  duplicative.

removal proceedings, he had several immediate family members who were residents and, in some cases, citizens of this country.  He had a record of steady employment, and he demonstrated rehabilitation during his prison term.  The IJ noted that he met the requirement of seven years' residency.  Because these factors amount to a "plausible ground for relief from deportation," Medina-Avila was prejudiced by the improper rejection of his § 212(c) application.  *Ubaldo-Figueroa*, 364 F.3d at 1050.

IT IS THEREFORE ORDERED THAT Medina-Avila's Motion to Dismiss the Indictment (doc. #15) is granted.

DATED: September 29, 2008.

_____
Neil V. Wake
United States District Judge